UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Roman Biberman,<br><br>    Plaintiff,<br><br>    v.<br><br>CITI Group, Inc.,<br><br>    Defendants. | **SECOND AMENDED COMPLAINT**<br><br>No. 18-cv-4046 (GBD)<br><br>Jury Trial Demanded |

Plaintiff, by and through his attorney, Gregory Antollino of Antollino, PLLC, hereby files this Complaint against Defendant, and states as follows:

1. This is a complaint brought under Title VII, the ADEA and the New Jersey Law against Discrimination.

## THE PARTIES, JURISDICTION AND VENUE

2. Plaintiff repeats and realleges all previous paragraphs.

3. Plaintiff is a Citizen of the state of New York.

4. Citigroup ("Citi") is a Citizen of Delaware with offices all over the world including the Southern District of New York.

5. Jurisdiction is brought under the federal question doctrine and venue is proper because one of the defendants does business in this district.

## FACTUAL ALLEGATIONS

6. Plaintiff repeats all previous paragraphs.

7. Roman Biberman was 63 years of age when let go from Citibank. He's an American Citizen of Russian descent and a highly experienced, well regarded computer programmer.

8. Citibank has a right to hire less expensive workers, but it does not have the right to hire less expensive workers of a different Citizenship than Americans.

9. Citibank would not characterize it as such, but it deals in the H1B scam.

10. An H1B visa is a visa given to foreign nationals – usually South Asians, because it is a ticket to a Green Card.

11. Citibank advertises in South Asians to apply for these jobs.

12. Citibank likes H1B workers because they are cheaper, and most importantly short term. They stay on three-year stints and don't assert the rights that Americans do.

13. There is a near constant supply of them, and for certain tech projects, Citi will look for the H1B over the American Citizen.

14. Occasionally, there are open positions, and it offers temporary jobs to American workers.

15. Nevertheless, the H1B system is supposed to work the other way around: That is, Citi should be looking for American workers and filling positions with

foreign Citizen H1B workers only when there are no Americans capable of doing the job. But Citi is very protective of this regime

16.     In plaintiff's case, he worked as the *sole* American Citizen at a branch of Citibank in tech work. In other words, for him to get the job, there had to be not a single other American to work in the job. Instead, Citi was short one H1B worker, and it reached out to a temp agency.

17.     He was hired by an employment agency (Axelon Services) to work at Citi as a consultant; and both Axelon, who is not a party herein, and Citi were joint employers. Plaintiff has no beef with Axelon, except to the extent that it aided and abetted this scheme – though it was getting jobs for Americans and could do nothing about Citi's illegality.

18.     Biberman started work on 5/26/2015. He did a very good job, evident from the fact that when Citi imposed a 22% wage cut for all consultants across the board in 2016, his salary cut was not so significantly reduced. His superiors told him not to share this fact with any colleagues, so as not to cause any problems. They wanted Roman because he was a good worker, and when employees know each other's wages, they make a stink about it if there is unequal pay for equal work.

19.     In this case, however, plaintiff was paid more because he was on the ball and a good worker and there were no H1B workers to work for less.

20.     To hire a person for less is not illegal, so long as you are not giving preferential treatment to H1B workers.

21. Plaintiff's contract was routinely extended to the next period (year or quarter) until 03/21/2017, when he was told that it would not be extended beyond 03/31/2017. There was no reason given for this because he was in the middle of some projects.

22. Plaintiff was told that the decision was made by a newly appointed Managing Director - Mr. Vinod Vallabhaneni - of Indian descent, but, upon information and belief, an American Citizen. He was not the hiring director, but plaintiff had worked with him before.

23. Plaintiff's colleagues Gurram Srikant and Vignesh Parasuraman both told this to plaintiff. However, Citibank told the EEOC it was the decision of the latter two, and upon information and belief these gentlemen (both of South Asian descent and former H1B workers) preferred H1B workers in the Citi tradition – whether they were Green Card Holders or not – over American workers and they did, in fact, make the decision, despite their lie to the contrary. They were merely looking for a scapegoat to explain this change to Roman.

24. What Citi wanted to do was to find an H1B worker in Florida and a South Asian Canadian worker, and they pushed Roman out of the job.

25. Neither job, however, was filled. Citi claimed it was doing poorly that year, but it did a little better in 2017 than in 2016 and marginally less in 2016 than in 2015 – these modest changes in earnings had nothing to do with Roman's termination; they just didn't want permanent workers around and preferred the

H1B.

26. The rest of plaintiff's colleagues were all of South Asian decent. Citi insisted that a "younger" woman of Indian decent was also fired, and thus that means that age discrimination could not be a factor in getting rid of plaintiff who at 66 was the oldest. Firing a younger person at the same time as an older does not rule out or absolve age discrimination, and in fact up[on information and belief she left for personal reasons.

27. Citi never explained to the EEOC why either one of them were chosen. Citi indicates that plaintiff's job in Jersey City is still open because Srikant and Parasuraman decided to transfer the position to Canada where it is "easier" to get JAVA programmers than Newark, a stone's throw from Silicon Alley. This is simply a lie, an argument based on faulty logic, or both.

28. First, if the job remains open and plaintiff was the one selected for termination, the question is why is the only Caucasian man of 66 (or at the time 63) years of age selected for termination?

29. Further, a multinational corporation with deep ties to the United States cannot fire a plaintiff because of his age or ethnicity (or both) and transfer his job to Canada (and if not hire a younger South Asian) anymore than a manager can force a worker in Guam to submit to his sexual advances under the threat that he will transfer her job to China.

30. The overwhelming majority of these workers were on H1B visas, which

meant that they could only be hired if Citi could find no U.S. Citizen to take their job. Since plaintiff was let go, and since he could do the job he was replaced for, at least one American Citizen (plaintiff) was available to fill the person hired under the H1B.

31. Employers like Citi prefer H1B workers more than American Citizens because (a) they accept lower wages; (b) they are less apt to enforce their rights under the law because if they lose the job they must leave the country unless they can find a new sponsor; (c) they only stay around for a few years as these Visas are limited in the number of times they may be renewed.

32. Mr. Srikant, the hiring manager, and Mr. Vignesh, plaintiff's team leader made a pretextual showing to defend plaintiff's job by informing Vallabhaneni that his performance & discipline were good. Indeed, plaintiff worked with Vinod at Bank of New York in 2002 through 2004. There was no hostility between them.

33. When Vignesh notified plaintiff about this decision and explained who was behind it, he asked plaintiff, "What happened between you and Vinod at the Bank of New York?"

34. This suggested a problem between them was the cause of the termination, but this was simply a lie.

35. Plus, under the H1B rules, plaintiff could do the job therefore he should not be fired and replaced with an H1B worker who, upon information and belief, is of South Asian descent and from Canada – either living in the United States or

Canada. It is immaterial where that person lives, or is a Citizen, unless he is exactly similar in demographics to plaintiff, and we are sure he or she is not.

36. If he was an American Citizen - which we doubt - he was not of Russian descent and South Asian.

37. There's no policy limiting a consultant's contract duration in Citi. Employees were routinely extended again and again, except as limited by immigration law.

38. Citi usually extends consultant contracts, as a cost cutting measure. There was no contemplated "final extension" for plaintiff. It only turned out to be final when the disparate treatment occurred.

39. There were people who became permanent employees and worked there for 3-4 years under contract; these were usually former h1B workers who obtained Green Cards

40. The decision was made in an environment where 70% of workers are current or former H1 Visa holders from South Asian. (Plaintiff does not denigrate South Asians, as most of them were hard-working professionals. But they can only take the jobs of Americans if there is no American – like Roman Biberman – who can do the job.)

41. However, this was not a downsizing; it was a termination of a good worker whose only difference between the others is that he was not Indian and was older.

42. Additionally, the decision was motivated in part because of plaintiff's age -

well above the pool of workers who did the same thing.

43.     It took Mr. Biberman a long time to get a new job. He found that employment agents and hiring managers were very skeptical about his explanation as to why he was fired and they asked, "If you as good as you say you are, why didn't Citi extend your contract? Why they didn't make you a permanent employee?"

44.     It was a stigma upon Biberman, which negatively impacted his job search and he is now working for less money years after his termination.

45.     Using all means available, Citi boasts its equality and inclusiveness, but it didn't apply to an American in his case - and one who produced good work.

46.     Given plaintiff's good work and previous decent relationship with Vinod, there is no other explanation other than discrimination to explain the fact that a new managing director, out of the blue, over the heads of 3 managers reporting to him, singled out one consultant (plaintiff) to terminate his contract.

47.     Citi has simply a pattern and practice of hiring h1B workers *first,* then hiring Americans only when other banks or tech firms get them first. When it fired plaintiff, he suffered extreme emotional distress, loss of income and loss of opportunity to get a permanent job at Citi – something that he had been told he would get eventually.

## FIRST CAUSE OF ACTION
## TITLE VII NATIONAL ORIGIN DISCRIMINATION

48.     Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein.

49.     For the above-stated reasons, plaintiff was discriminated on the basis of his race or ethnicity under Title VII.

50.     Plaintiff filed and received a right to sue letter from the EEOC within 90 days.

51.     As a result of the foregoing, defendants have violated Title VII and plaintiff demands redress.

## SECOND CAUSE OF ACTION
## AGE DISCRIMINATION - ADEA

52.     Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

53.     Plaintiff was the oldest and replaced by a vastly younger worker in part because of his age.

54.     As a result of the foregoing, plaintiff has been damaged and demands compensatory and liquidated damages.

## THIRD CAUSE OF ACTION
## 42 U.S.C. § 1981a
## CITIZENSHIP AND OR IMMIGRATION STATUS DISCRIMINATION

55.     Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

56. As a result of the foregoing plaintiff was discriminated against on the basis of his immigration status and Citizenship.

57. As a result of the foregoing, plaintiff has been damaged and demands compensatory and punitive damages.

FOURTH CAUSE OF ACTION
NEW JERSEY LAW AGAINST DISCRIMINATION – NATIONAL ORIGIN

58. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

59. As a result of the foregoing, plaintiff has been discriminated against on the basis of his age.

60. As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive relief.

WHEREFORE, Plaintiff respectfully request that this Court find against Defendant as follows:

    a. Award Plaintiff the value of all compensatory damages as a result of emotional distress, physical pain and suffering and loss of reputation

    b. Award punitive damages;

    c. Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

    d. Award liquidated damages;

    e. Award Plaintiff such other relief as this Court deems just and

proper.

f.  To the extent the N.J. Law against Discrimination does not allow discrimination to be any part of a mixed motive decision to termination, to the extent the jury finds discrimination was *any* reason for the termination, nominal damages, attorneys fees, expenses and expert-witness fees

Dated:      New York, New York
            17 September 2018

By:   */s/ Greg S. Antollino*
      Gregory Antollino, Esq.
      Principal, Antollino, PLLC
      Attorney for Plaintiff
      275 Seventh Avenue Suite 705
      New York, NY 10001
      (212) 334-7397